UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JACOB C. BRIER, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-1006-GSL-JEM |
| JASON SMILEY, et al., | |
| Defendants. | |

OPINION AND ORDER

Jacob C. Brier, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Brier suffers from a serious mental illness. He was transferred to Westville Control Unit ("WCU") in February 2024, after he attacked an officer during a mental health crisis. He was hallucinating and believed the officer intended to kill him. He complains about the conditions of his cell in the WCU and the adequacy of his physical and mental health care.

*Conditions of Brier's Cell in WCU*

Upon Brier's arrival, he was placed in a cell without working water. The walls were caked with feces and blood. The toilet contained feces and urine. There were sewer flies, roaches, and mice in his cell. *Id.* He complained to his mental health workers, Tori Halcarz and Tracy Cornett, about the condition of the cell. Cornett allegedly responded by stating, "[A]fter what you did to that officer you[r'e] not getting shit[. W]e protect our own here[.]" ECF 1 at 3. He claims Cornett knew about the conditions of his cell since February. Brier indicates that, for three months, he begged Correctional Captain Mr. Rippe and Warden Smiley for help due to these conditions. Brier asserts that his broken sink and toilet were not repaired until October. They were only repaired because a repairman was in the area fixing something else and Brier begged for help.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v.*

2

*Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations, brackets, and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

Giving Brier the inferences to which he is entitled to at this stage of the case, he will be allowed to proceed against Tori Halcarz, Tracy Cornett, Mr. Rippe, and Warden Smiley on a conditions of confinement claim based on the presence of feces and blood on his walls and lack of a working toilet and sink.

Brier will also be permitted to proceed against the Warden Smiley in his official capacity for permanent injunctive relief to be housed in a cell free of blood, feces, and urine, as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

As for Brier's exposure to sewer flies, roaches, and mice, prolonged exposure to infestations can be serious enough to amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D. Ill. 2016). Other than noting they are prevalent, Brier provides little detail about his experiences with sewer flies, roaches, and mice or how they impacted him. As to these conditions, Brier's allegations are too vague to state a claim.

*Physical and Mental Health Care in WCU*

Brier reports that his mental health continued to deteriorate while housed in WCU, and he begged Tori Halcarz for help. She responded by directing him to pray for forgiveness for hurting the correctional officer. He was having auditory hallucinations and began cutting himself and slamming his head on the walls and door to try to get the voices to stop. On one occasion, Halcarz, Cornett, and Rippe allegedly stood at his door and watched Brier hit his head until he blacked out. Rippe was laughing. Brier begged Rippe for help, but he offered no assistance.

Brier tried to kill himself by swallowing thirty pills.[1] His attempt was unsuccessful. He woke up in a puddle of vomit and told Halcarz, Cornett, and Rippe what he had done. Cornett responded by saying, "[Y]ou['re] alive so it couldn't have been serious." *Id*. at 4. Brier wrote Warden Smiley, Ms. Bridegroom, the mental health

---

[1] He does not indicate when this occurred or what kind of pills he swallowed.

4

director at Westville, and a "slew" of others begging for help. *Id.* He received no response.

At some point, Brier attempted to hang himself. The rope snapped and he woke up bleeding from the head. Nurse Katie Jacobs and Correctional Officer Ms. Clemens were standing at his door looking at him. Jacobs asked, "What the fuck are you doing?" *Id.* at 5. She also said, "You fucking idiot[.] I'm not doing the paperwork[.]" *Id.* Brier tried to stand up, but the rope was still choking him, and he fell. Jacobs stated, "[F]uck him[. H]e just wants attention[.] I'm definitely not doing the paperwork[.] I'm not calling mental health either[. H]e can fucking die for all I care[.]" *Id.* Mr. Clemens then allegedly said, "[Y]ou hear that you retarded fuck you['re] not getting your medication and we're not calling mental health[.] Kill yourself[. T]hen the voices will be the least of your worries." *Id.* They walked away. He was losing lots of blood and blacked out several times.

When he awoke the next day, he completed a medical request form to give to the nurse when medications were passed. When Ms. Jenkins passed meds, she said "I heard what happened yesterday from Katie[. W]hat the fuck is wrong with you stupid white motherfuckers[? A]ll ya'll crazy and ya'll want to kill yall self." *Id.* at 5-6. She laughed. Brier asked her to take his health care request slip and indicated he needed medical attention for a gash and that he was still suicidal and needed to see mental health. Her response was allegedly as follows:

> I'm a tell you the same thing I tell the rest of these crazy white motherfuckers[. I]f you cut yourself or do something to fuck yourself I'm not cleaning that shit up[. Y]ou did it to yourself[. Y]ou['re] not dead or

5

>  dying so you will be fine and I'm not taking that slip[. D]o you want your medication or not?

*Id.* at 6. She left before Brier could respond.

Brier reports that his mental health continues to deteriorate, and his efforts to obtain help have been fruitless. He continues to harm himself and fears that one of his suicide attempts will be successful. He indicates that he has been in solitary confinement for over a year[2] for something he did during a mental health breakdown. *Id.* at 6. Brier argues that segregation itself has caused his mental health to worsen, and he cannot obtain the help he needs while housed in segregation.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board*, 394 F.3d at 478. For a medical professional to be held liable for deliberate

---

[2] Elsewhere Brier indicates it has been over a year and a half. *Id.* at 7. He also reports that he was transferred to the WCU less than a year ago, in February 2024.

6

indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

"The consensus of opinion in a professional body of literature on the subject . . . is that segregation is detrimental for people with serious mental illness because it makes their symptoms worse or because, at best, they do not get any better." *Indiana Prot. & Advoc. Servs. Comm'n v. Comm'r, Indiana Dep't of Correction*, No. 1:08-CV-01317-TWP, 2012 WL 6738517, at *15 (S.D. Ind. Dec. 31, 2012). There is a growing recognition among courts regarding the harmful effects of segregation on inmates who are mentally ill. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666-67 (7th Cir. 2012) ("prolonged placement in segregation might have adverse effects on someone in Rice's condition"), *abrogation on other grounds recognized in Kemp v. Fulton Cnty*, 27 F.4th 491, 494 (7th Cir. 2022); *Scarver v. Litscher*, 434 F.3d 972, 975-96 (7th Cir. 2006) ("There is an extensive literature on the effect of ... isolation ... on mentally disturbed prisoners."). Safety concerns may nonetheless necessitate isolation. "[T]he treatment of a mentally ill prisoner who happens also to have murdered two other inmates is much more complicated than the treatment of a harmless lunatic." *Id.* at 975-76.

Giving Brier the benefit of all favorable inferences, as this court must at this stage of the case, he has stated a claim against Tori Halcarz, Tracy Cornett, Mr. Rippe, Katie Jacobs, Correctional Officer Ms. Clemens, and Ms. Jenkins for being deliberately indifferent to his serious medical needs, both mental and physical, while housed at the WCU.

Brier is also suing Warden Smiley, Ms. Bridegroom, John/Jane Doe Mental Health Director of Westville Correctional Facility, John/Jane Doe Medical/Mental Health Director of Central Office, and John/Jane Doe Director of Classification at Westville Correctional Facility. He alleges that he wrote letters to Warden Smiley, Ms. Bridegroom, and John/Jane Doe Mental Health Director of Westville Correctional Facility, and they did not respond. Additionally, he alleges that he interacted with John/Jane Doe Medical/Mental Health Director of Central Office, and John/Jane Doe Director of Classification through grievances and appeals. He contends that, in one way or another, each of these defendants had to "sign off" on him remaining in segregation where he is allegedly receiving inadequate medical treatment. ECF 1 at 9.

"'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a

8

> prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Likewise, Brier cannot hold these individuals liable for decisions made by others. To the extent they may have been involved in the decision to keep Brier in long term segregation by approving recommendations of the committee assigned to assess Brier, these individuals were entitled to rely upon the information they were provided. Brier has not pled facts from which it can be inferred that Warden Smiley, Ms. Bridegroom, John/Jane Doe Mental Health Director of Westville Correctional Facility, John/Jane Doe Medical/Mental Health Director of Central Office, or John/Jane Doe Director of Classification at Westville Correctional Facility were deliberately indifferent to his physical or mental health needs when responding to grievances, grievance appeals, or otherwise "approving" his remaining in segregation despite his serious mental illness.

Brier will, however, be permitted to proceed against the Warden Smiley in his official capacity for permanent injunctive relief to receive constitutionally adequate physical and mental health care, including alternative placement, if his mental health needs cannot be addressed in a manner that comports with the Eighth Amendment at the WCU. *See Gonzalez*, 663 F.3d at 315.

*Centurion Health*

Brier has named Centurion Health as a defendant. A private company performing a public function can be held liable if its own policies caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Rice*, 675 F.3d at 675. The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Brier has not alleged facts from which it can be plausibly inferred that Centurion Health has a policy of holding seriously mentally ill inmates in long term segregation without justification. Therefore, he may not proceed against Centurion Health.

*Claims Against the Indiana Department of Correction*

Brier has also named the Indiana Department of Correction ("IDOC") as a defendant. Constitutional claims can be brought against a "person" under 42 U.S.C. § 1983, but the IDOC is not a "person" under § 1983. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) ("a State is not a 'person' within the meaning of § 1983"). Therefore, Briar may not proceed against the IDOC.

*Commissioner Christine Reagle*

Brier has sued Commissioner Christine Reagle, but the complaint does not allege that she was personally involved in decisions regarding conditions of Briar's cell, Briar's placement, or his health care. There is no general supervisory liability under 42 U.S.C. § 1983. *Burks*, 555 F.3d at 594. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Because the complaint does not allege any personal involvement on the part of Commissioner Reagle, Brier cannot proceed against her in her individual capacity.

To the extent Brier may be suing Commissioner Reagle in her official capacity, this amounts to a claim against the state, and it cannot proceed for the same reason that Brier's claims against the IDOC cannot proceed. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. "[N]either a State nor its officials acting in their official capacities are "persons" under § 1983." *Id*. Therefore, he cannot proceed against Commissioner Reagle in her official capacity.

*Motion for Preliminary Injunction*

Brier filed a motion seeking a preliminary injunction ordering that he be released from segregation because he does not believe he can receive the mental health care he needs while in segregation. He believes he should be placed in a unit designed to treat inmates with serious mental health conditions. "[A] preliminary injunction is an

11

extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Here, Brier asks the court to order that he be transferred out of segregation so he can have greater access to the mental health treatment he needs. Brier is entitled only to adequate mental health care as required by the Constitution. It is unclear if Brier is

12

receiving adequate mental health care, but to the extent he is not, there may be multiple methods of providing constitutionally adequate care to Brier. He cannot dictate how it is provided.

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief – if granted – would be limited to requiring that Brier be provided with constitutionally adequate medical care for his condition, as required by the Eighth Amendment. Brier's motion for preliminary injunctive relief will be taken under advisement. The Warden will be required to respond to the motion, and Brier will have an opportunity to file a reply.

The court notes that, in response to this court's notice to the warden that Brier reported he was suicidal, the Warden filed a response. ECF 9. That response addressed only the warden's response to this court's notice that Brier may be suicidal. It did not specifically address Brier's motion for a preliminary injunction or his claim that he has not obtained and cannot obtain adequate mental health care while housed in the WCU due to the detrimental effects that segregation has had on him. As noted earlier in this order, it is widely accepted that segregation is detrimental to people with serious mental illness. Warden Smiley must address not only the adequacy of the mental health

treatment that is being provided to Brier but also the detrimental effects of segregation itself. Warden Smiley is further directed to discuss what he believes to be the least restrictive remedy, should this court find that Brier has made a showing that his mental health treatment does not comport with the Eighth Amendment. While it may not be reasonable to place Brier in general population, given the nature of his mental illness, a mental health unit may provide a sufficiently secure environment to address any safety concerns Brier may pose while providing greater access to mental health care.

For these reasons, the court:

(1) GRANTS Jacob C. Brier leave to proceed against Tori Halcarz, Tracy Cornett, Mr. Rippe, and Warden Smiley in their individual capacities for compensatory and punitive damages for subjecting him to unconstitutional conditions of confinement in the form of cell walls with feces and blood throughout his placement in WCU and lack of a working toilet and sink between February 2024 and October 2024, in violation of the Eighth Amendment;

(2) GRANTS Jacob C. Brier leave to proceed against Warden Smiley in his official capacity for permanent injunctive relief to be housed in a cell free from blood, feces, and urine, as required by the Eighth Amendment;

(3) GRANTS Jacob C. Brier leave to proceed against Tori Halcarz, Tracy Cornett, Correctional Captain Mr. Rippe, Katie Jacobs, Correctional Officer Ms. Clemens, and Ms. Jenkins in their individual capacities for compensatory and punitive damages for deliberate indifference to his physical and mental health needs while held in solitary confinement since February 2024, in violation of the Eighth Amendment;

14

(4) GRANTS Jacob C. Brier leave to proceed against Warden Smiley in his official capacity for permanent injunctive relief to receive constitutionally adequate mental health treatment, including non-segregated housing, consistent with the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Ms. Bridegroom, John/Jane Doe Mental Health Director of Westville Correctional Facility, John/Jane Doe Medical/Mental Health Director of Central Office, John/Jane Doe Director of Classification at Westville Correctional Facility, Centurion Health, Indiana Department of Correction, and Commissioner Christina Reagle;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Correctional Officer Mr. Clemens, Correctional Captain Mr. Rippe[3] at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Tori Halcarz, Tracy Cornett, Katie Jacobs, and Ms. Jenkins at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

---

[3] Warden Smiley is not included here because he has already entered an appearance.

(9) TAKES UNDER ADVISEMENT Jacob C. Brier's Motion for Preliminary Injunction (ECF 3);

(10) ORDERS Warden Smiley of the Westville Correctional Facility to respond to the request for preliminary injunction contained in Jacob C. Brier's complaint and file an affidavit or declaration with the court, explaining how Jacob C. Brier's serious mental illness is being treated in a manner that comports with the Eighth Amendment's requirements, and an explanation of Brier's placement in long-term segregation despite the risks this poses to inmates with serious mental illness, by **February 7, 2025**;

(11) GRANTS Jacob C. Brier until **February 21, 2025**, to file a reply to the Warden's response;

(12) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service, if it has such information; and

(13) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Jason Smiley, Correctional Officer Mr. Clemens, Correctional Captain Mr. Rippe, Tori Halcarz, Tracy Cornett, Katie Jacobs, and Ms. Jenkins to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 15, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT